# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RONALD C. RASHOFF, and LORI J. RASHOFF, individually and as Personal representative of the Estate of RYAN C. RASHOFF, | No. 45919-1-II |
| Appellants, | |
| v. | |
| THE STATE OF WASHINGTON | |
| Respondent, | |
| BENJAMIN O. LAMOTTE, | |
| Defendant. | |
| BENJAMIN O. LAMOTTE, | UNPUBLISHED OPINION |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON | |
| Respondent. | |

LEE, J. — Ryan Rashoff and Benjamin Lamotte were involved in a car accident that killed Ryan[1] and injured Lamotte. Ryan's parents (the Rashoffs) and Lamotte each filed suits against the Washington State Department of Transportation (WSDOT), which were consolidated for trial.

---

[1] Because Ryan Rashoff's parents are the appellants in this suit, this opinion refers to Ryan Rashoff as "Ryan" to avoid confusion, and we intend no disrespect in doing so.

The suits alleged that WSDOT was liable for negligently failing to maintain the intersection where the collision occurred in a reasonably safe manner.

The Rashoffs and Lamotte now appeal the superior court's dismissal of WSDOT on summary judgment, arguing that (1) the superior court erred in finding their expert's conclusions based on the warrants in the Manual on Uniform Traffic Control Devices were inadmissible under ER 702; (2) material issues of fact exist as to whether the intersection was reasonably safe for an ordinary traveler; (3) the condition of the intersection was a proximate cause of the accident; and (4) the superior court erred in dismissing their claim for impending death damages. We hold that (1) the superior court did not exclude appellants' experts' testimony; (2) issues of material fact exist as to whether the intersection was reasonably safe for an ordinary traveler; (3) issues of material fact exist as to whether the condition of the intersection was a proximate cause of the accident; and (4) summary judgment denying impending death damages is proper. Therefore, we reverse in part, remand for trial on appellants' negligence claim against WSDOT, and affirm the dismissal of impending death damages.

FACTS

Ryan was killed in a car accident at the intersection of State Route 12 (SR 12) and Williams Street/New Harmony Road (Williams Street.) in Mossyrock, Washington. The accident occurred at 3:17 PM on December 8, 2009. Ryan was riding in the front passenger seat of a pickup driven by Lamotte.[2] The pickup was travelling northbound on Williams Street and entered the intersection after stopping at the stop sign in front of the intersection. Vance Steen was driving a

---

[2] The Rashoffs have an ongoing negligence claim against Lamotte which does not affect this appeal and was stayed in the superior court pending the outcome of this appeal.

log truck westbound on SR 12. Lamotte's pickup accelerated into the intersection, and the log truck collided with the passenger side of Lamotte's pickup. The log truck entered the passenger compartment, killing Ryan and injuring Lamotte.

At the intersection where the accident occurred, SR 12 consists of one lane eastbound and one lane westbound, each with a left turn lane. Williams Street consists of one lane northbound and one lane southbound. Suspended over the intersection were flashing red lights facing the north and south approaches on Williams Street and yellow flashing lights facing the east and west approaches on SR 12. Signs reading "CROSS TRAFFIC DOES NOT STOP" were posted under the stop signs on Williams Street. Clerk's Papers (CP) at 138. Lamotte's view was not obstructed, the log truck had its headlights on, the sun was "behind" Lamotte's line of sight, and his line of sight was 2,000 feet. The speed limit on SR 12 was 55 m.p.h., and witnesses stated that the log truck had been traveling at approximately 55-60 m.p.h. before the accident. Lamotte testified that he only remembers stopping at the stop sign and proceeding forward; he remembers nothing else.

Lamotte's actions after stopping at the stop sign are unclear. In his deposition, Steen described Lamotte as accelerating into the eastbound lane, pausing, and then accelerating into the westbound lane Steen was traveling in. Steen said that when he saw them pause in eastbound lane, he thought Lamotte had seen him and was letting him pass. But in his statement to the Washington State Patrol shortly after the accident, Steen does not mention Lamotte pausing in the eastbound lane.

Richard Ary was driving in the eastbound lane on SR 12, but he did not see whether Lamotte paused in the intersection. Ary was checking his mirrors when Lamotte entered the intersection and looked up just as Lamotte was entering Steen's lane. When Ary arrived at the

3

intersection "less than a minute" after the collision, Ryan was unconscious and died before regaining consciousness.  CP at 224.

The Rashoffs and Lamotte filed separate suits against WSDOT, which were subsequently consolidated for trial.  They alleged that the intersection where the accident occurred was unreasonably unsafe.  The claims against WSDOT were based in part on the intersection's accident history, which showed 21 accidents—including three fatalities—between March 2003 and the Rashoff-Lamotte accident on December 8, 2009.

WSDOT filed a motion for summary judgment, offering the declarations of its experts, Robert Seyfried and Chad Hancock.[3]  The Rashoffs and Lamotte opposed the motion, filing declarations of its own experts, Edward Stevens and Richard Gill.

Both of WSDOT's experts testified that the intersection did not meet any of the traffic "warrants"[4] that indicate an "all-way stop control" may be needed, and therefore, it would have

---

[3] Hancock was WSDOT's Southwest Region traffic engineer.

[4] Appellants' expert, Stevens, describes "warrants" as follows: "Warrants can be thought of as analytical techniques to be followed to determine if a traffic signal is justified at a particular location."  CP at 464.  Stevens further states: "Signal warrants and their prescribed methods of determination are part of the Manual on Uniform Traffic Control Devices (MUTCD)."  CP at 463-64.  Seyfried's explanation is similar and explains further:

> The Washington State Department of Transportation, like, I believe, every state transportation agency in the nation, uses and relies upon the "signal warrants" in the Manual on Uniform Traffic Control Devices (MUTCD) to determine whether a traffic signal should be considered for installation at an intersection.  The MUTCD signal warrants . . . evaluate the operation and geometrics of an intersection from a wide variety of perspectives including traffic speed, average traffic volume and the corresponding gaps available for the disfavored traffic . . . , the number and type of lanes on the respective roads, the crash experience at the intersection, and the intersection's relationship to other intersections and the highway network, school crossings, and pedestrian volume.

been imprudent and contrary to the Manual on Uniform Traffic Control Devices (MUTDC) for WSDOT to have installed a traffic signal before the December 8, 2009 accident. WSDOT's experts also testified that after the most recent accident at the intersection in 2007, the State had taken the next appropriate action and installed the "CROSS TRAFFIC DOES NOT STOP" signs. CP at 206. There were no accidents at the intersection between the installation of the signs and the accident suffered by Ryan and Lamotte over a year later.

Stevens testified that, according to his calculations, the intersection met two of the eight "warrants" and was inherently dangerous because of the traffic volume and number of accidents occurring in prior years. Stevens also pointed to the accident history reports for the intersection and the several e-mails from community members to Hancock requesting a controlled intersection.

Gill similarly testified that the intersection was inherently dangerous, but for different reasons. Gill relied on his analysis of the lane widths, the speed of through traffic on SR 12 compared to the stationary position of someone at the Williams Street stop signs, the impact severity of high speed cross through traffic, human perception of distances, and the amount of time it would take a car on Williams Street to clear the intersection. Gill also discussed "a number of visual and auditory cues available to him [Ryan] that would most likely have alerted him to the impending collision," to support the argument for impending death damages. CP at 440.

The Rashoffs and Lamotte also submitted an e-mail sent from Hancock to a concerned citizen. The e-mail stated:

> The intersection does meet 2 of the 8 warrants for a [traffic] signal. An intersection only has to meet one warrant for us to approve the installation. Because our needs list is longer than what we can afford to build, we have to prioritize all

---

CP at 593.

of the intersections that meet the warrants. It's currently #13 on our prioritization list, so it will be several years before WSDOT could get to it. An earmark is most likely the only way to fund the project in the near future, so you're going about it the right way. Our quick estimate for design and construction of just the signal is about $400,000. We have left turn lanes in place, so I'm assuming no widening will be necessary. There may be some other costs associated with the improvement that we're unaware of at this time, but nothing jumps out at us.

CP at 341.

WSDOT filed supplemental declarations from Seyfried and Hancock. Both agreed with Stevens that WSDOT follows the methodology set forth in the MUTCD for determining whether to consider installing a traffic signal, but both testified that Stevens had inflated the results of his calculations by not adjusting the raw data to account for multi-axel vehicles and seasonal changes in traffic volumes.

In a letter opinion on WSDOT's motion for summary judgment, the superior court stated:

This Court is persuaded that Dr. [sic] Stevens has not demonstrated that a correct application of the various factors in the MUTCD support his conclusions. *See* Second Decl. of Seyfried (filed 11/18/13). Unless Dr. [sic] Stevens is able to correctly apply the MUTCD, the Court is persuaded that his testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Evidence Rule 701 [sic]. Accordingly, his testimony would not be admissible and would not be considered in opposition to the State's motion. CR 56; *Cano-Garcia v. King Co.*, 168 Wn. App. 223 (2012). . . .

Due to the significance of such a ruling, however, this Court will allow Plaintiff to file a supplemental declaration to address whether the MUTCD's signal warrants have been met.

CP at 643.

In his supplemental declaration, Stevens acknowledged that an adjustment for multi-axle vehicles was not made to the 2006 data, but did not offer any explanation as to why he did not apply a multi-axle adjustment. Stevens responded to the absence of a seasonal adjustment in his calculations:

6

> I did not make any seasonal adjustments to the traffic counts because I was interested in the actual traffic volumes during the more heavily traveled summer months, which is when most of the accidents were occurring.

CP at 647.

After consideration of Steven's supplemental declaration, the superior court ruled:

> After allowing additional time for Plaintiff's expert to explain whether the criteria for safety measures of the Manual on Uniform Traffic Control Devices had been met, the Court is still persuaded that those criteria were not met before the accident.

CP at 722.[5] Accordingly, the superior court granted summary judgment in favor of WSDOT and dismissed both lawsuits. The Rashoffs and Lamotte appeal.[6]

## ANALYSIS

A.     STANDARD OF REVIEW

"We review summary judgment orders de novo and perform the same inquiry as the trial court." *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005); *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is proper if the record before the superior court establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Owen*, 153 Wn.2d at 787. A material fact is one affecting the outcome of litigation. *Owen*, 153 Wn.2d at 789. Summary judgment is also proper if the non-moving party "'fails to make a showing

---

[5] The record shows that the superior court never struck Steven's testimony. Instead, the order for summary judgment states that it received Stevens' testimony, and the superior court still found summary judgment was appropriate.

[6] Lamotte joined and adopted by reference Rashoff's arguments on appeal with the exception of those concerning Ryan's impending death damages. To try to minimize confusion, "appellants" is used when referring to the arguments made by the Rashoffs and adopted by Lamotte. Otherwise, each appellant is referenced by name.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Miller v. Likins*, 109 Wn. App. 140, 145, 34 P.3d 835 (2001) (quoting *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). A court may not consider inadmissible evidence when ruling on summary judgment. *Cano-Garcia v. King County*, 168 Wn. App. 223, 249, 277 P.3d 34, *review denied*, 175 Wn.2d 1010 (2012).

Generally, issues of negligence and proximate cause are not appropriate for summary judgment because they are questions of fact. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). But, a question of fact may be decided as a matter of law in situations where reasonable minds can only reach one conclusion. *Owen*, 153 Wn.2d at 788; *Moore v. Hagge*, 158 Wn. App. 137, 147, 241 P.3d 787 (2010). As the non-moving party, all facts and reasonable inferences are viewed in the light most favorable to appellants. *Owen*, 153 Wn.2d at 787. But, the nonmoving party may not rely on speculation, argumentative assertions, or on having its declarations considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Rather, after the moving party submits adequate declarations, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue of material fact exists. *Id*.

B.     EXPERT TESTIMONY OF STEVENS

Appellants argue the trial court erred in finding Stevens' conclusions based on the MUTCD warrants inadmissible under ER 702.[7] However, the record demonstrates that the superior court

---

[7] Appellants' argument on this point is a bit ambiguous. They never explicitly state they are disputing an ER 702 ruling. Instead they characterize it as "the trial court . . . *disregarding*" Stevens' opinion, and "improperly ma[king] a factual finding." Br. of Appellant at 2, 34. The respondents extensively argue that the testimony was excluded under ER 702 and that it was

never excluded Stevens' testimony. For that reason, and because we reverse and remand on other grounds, we decline to further address the issue of the admissibility of Stevens' testimony.

C.      NEGLIGENCE

To prevail on their negligence claim, appellants must show that (1) WSDOT owed Ryan and Lamotte a legal duty, (2) WSDOT negligently breached its duty, (3) the appellants suffered injury; and (4) the breach proximately caused appellants' injury. *Boguch v. Landover Corp.*, 153 Wn. App. 595, 609, 224 P.3d 795 (2009) (citing *Ruff,* 125 Wn.2d at 704). "Today, governmental entities are held to the same negligence standards as private individuals." *Owen*, 153 Wn.2d at 787; *Keller v. City of Spokane*, 146 Wn.2d 237, 242-43, 44 P.3d 845 (2002).

1.      Breach of Duty

Appellants argue that the superior erred in granting WSDOT's summary judgment on their negligence claim because issues of material fact exist as to whether WSDOT breached its duty to maintain the intersection where the accident occurred in a reasonably safe condition. We agree.

The parties agree that as the governmental entity responsible for the intersection, WSDOT owes a duty to all travelers to maintain the intersection in a condition reasonably safe for ordinary travel, which includes eliminating inherently dangerous or misleading conditions.[8] *Owen*, 153 Wn.2d at 788. "Liability for negligence does not require a direct statutory violation, though a statute, regulation, or other positive enactment may help define the scope of a duty or the standard

---

properly excluded. Even in the reply brief, the appellants do not address this as an ER 702 issue, but instead claim the trial court improperly weighed expert testimony.

[8] "That is not to say that any negligence on the part of the [Appellants] is irrelevant to the cause of action and may be raised by the [WSDOT] when appropriate." *Owen*, 153 Wn.2d at 787.

of care. The MUTCD provides at least some evidence of the appropriate duty." *Id.* at 787 (citation omitted); *see also* RCW 47.36.030(1) (imposing duty on secretary of transportation to adopt uniform state standard for signs and other traffic control devices used on state highways and directing that such signs "shall conform as nearly as practicable to the manual of specifications for the manufacture, display, and erection of uniform traffic control devices for streets and highways"); WAC 468-95-010 (noting secretary of transportation's adoption of the MUTCD); *Kitt v. Yakima County*, 93 Wn.2d 670, 672, 611 P.2d 1234 (1980) (noting the adoption of the MUTCD).

Generally, whether WSDOT breached that duty by failing to maintain a roadway that is reasonably safe for ordinary travel is a question of material fact. *Owen*, 153 Wn.2d at 788. However, "[q]uestions of fact may be determined as a matter of law 'when reasonable minds could reach but one conclusion.'" *Id.* at 788 (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). Whether a condition is inherently dangerous or misleading, and the adequacy of the government's attempts at corrective action, are also, generally, questions of fact. *Id.*, at 788. An inherently dangerous condition is one that exists in the roadway itself. *Barton v. King County*, 18 Wn.2d 573, 576-77, 139 P.2d 1019 (1943) (quoting *Leber v. King County*, 69 Wash. 134, 136-37, 124 P. 397 (1912)).

WSDOT argues that the undisputed evidence showed that the Williams Street/SR 12 intersection met or exceeded accepted engineering standards, and therefore, it did not breach any duty as a matter of law. We disagree.

In *Xiao Ping Chen v. City of Seattle*, 153 Wn. App. 890, 223 P.3d 1230 (2009), *review denied*, 169 Wn.2d 1003 (2010), Division One of this court rejected the same argument relied on by WSDOT. In *Chen*, the city argued that summary judgment was appropriate because the plaintiff

failed to establish any physical defect with the crosswalk that rendered the crosswalk inherently dangerous or misleading, there was no evidence that the City had violated any law requiring safety measures different than those installed at the crosswalk, and MUTCD did not require the city to do anything more with the marked crosswalk. *Id.* at 898. The court in *Chen* rejected the city's arguments and held that a plaintiff did not need to establish a particular defect existed in order to defeat summary judgment. *Id.* at 894. Rather, "consideration of all of the surrounding circumstances is necessary to determine whether a particular roadway presented an unsafe condition." *Id.* at 909. In *Chen*, the plaintiff-appellant's production of reports of past accidents in the crosswalk, multiple citizen requests for a traffic light, and expert witness opinions were sufficient to reverse the superior court's summary judgment decision in favor of the city of Seattle. *Id.* at 909-11.

Here, the appellants presented similar evidence to show that WSDOT breached its duty to keep the intersections reasonably safe for ordinary travel, including evidence of past accidents at the intersection; requests by community members for the installation of a traffic signal; the e-mail from WSDOT's traffic engineer, Hancock, stating the intersection met two of eight warrants for a traffic signal and was on a priority list for the installation of a traffic signal; and the opinions of their experts, Stevens and Gill. Specifically, Stevens testified he believed the absence of any accidents from the time the "Cross Traffic Does Not Stop" sign was installed to Ryan's and Lamotte's accident was "more likely explained by normal variation in the crash frequency, rather than a result of the 'cross traffic does not stop' sign."[9] CP at 649.

---

[9] This particular conclusion was not substantiated with improperly applied methodology, and thus is admissible.

Additionally, Gill concluded that the roadway itself was inherently dangerous because of the width of the lanes and the time it takes to cross them. This conclusion, combined Stevens' interpretation of the prior accident reports, Hancock's e-mail, and the community requests for the installation of a traffic signal created an issue of material fact as to whether WSDOT breached its duty to keep the intersection reasonably safe for ordinary travel sufficient to withstand summary judgment. *Chen*, 153 Wn. App. at 909-11.

    2.    Proximate Cause

WSDOT argues that the appellants failed to show the condition of the intersection proximately caused the accident. We hold that an issue of material fact exists as to whether WSDOT's alleged failure to maintain the intersection in a reasonably safe condition was a proximate cause of the accident.

"Washington Courts have repeatedly held that in order to hold a governmental body liable for an accident based upon its failure to provide a safe roadway, the plaintiff must establish more than that the government's breach of duty *might* have caused the injury." *Miller*, 109 Wn. App. at 145 (alteration in original). To defeat summary judgment, a showing of proximate cause must be made, and the showing "must be based on more than mere conjecture or speculation." *Garcia v. Dep't of Transp.*, 161 Wn. App. 1, 15, 270 P.3d 599 (2011). To establish WSDOT's breach was a proximate cause of appellants' injuries, appellants must establish both cause-in-fact and legal causation. *Miller*, 109 Wn. App. at 145.

Cause-in-fact means that "but-for" WSDOT's failure to make the intersection reasonably safe for ordinary travel, the injury would not have occurred. *See Id.*, at 145. Cause-in-fact is generally a question for the jury, "but it may be decided as a matter of law if the causal connection

between the act and the injury is 'so speculative and indirect that reasonable minds could not differ.'" *Cho v. City of Seattle*, 185 Wn. App. 10, 16, 341 P.3d 309 (2014) (quoting *Moore*, 158 Wn. App. at 148), *review denied*, 183 Wn.2d 1007 (2015). "'The cause of [the] accident [is] . . . speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another.'" *Cho*, 185 Wn. App. at 16 (quoting *Moore*, 158 Wn. App. at 148) (alterations in original). Legal causation asks whether liability attaches as a matter of law, or if the relationship between the defendant's acts and the plaintiff's injuries are instead too attenuated. *Miller*, 109 Wn. App. at 145; *Hartley*, at 778-79.

The appellants argue that Lamotte's stopping at the stop sign before proceeding into the intersection "constitutes strong circumstantial evidence that, had there been a traffic signal or a four-way stop in place," Lamotte would not have crossed until it was his turn. Reply Br. at 21. We agree.

Here, the evidence shows that Lamotte followed the rules of the road by stopping at the stop sign on Williams Street. Lamotte then traveled into the intersection, maybe pausing in the eastbound lane, before traveling into the path of Steen's log truck. The evidence also shows that Steen followed the rules of the road by traveling at, or close to, the speed limit, having his headlights on, and watching Lamotte's actions. Given these facts, we cannot say as a matter of law that the causal connection between WSDOT's alleged breach of its duty to maintain the intersection in a reasonably safe condition for ordinary travel (by installing further safety measures to control vehicle travel) and the collision is "'so speculative and indirect that reasonable minds could not differ.'" *Cho*, 185 Wn. App. at 16 (quoting *Moore*, 158 Wn. App. at 148). Therefore, we hold that summary judgment was improper on this issue.

D.      IMPENDING DEATH DAMAGES

The Rashoffs[10] argue that the superior court erred by dismissing their claim for Ryan's fear of impending death. We disagree.

The Rashoffs claim the declaration of Gill presents "substantial circumstantial evidence . . . that Ryan Rashoff would have been aware of his impending severe injury or death in the moments before the collision." Br. of Appellant Rashoff at 42. WSDOT acknowledges that Washington law allows recovery for a decedent's fear of impending death, but argues "there is no admissible evidence that Ryan perceived or knew the crash was imminent." Br. of Resp't at 48.

An estate is entitled to recover for a decedent's pain and suffering prior to death under Washington law. *See* RCW 4.20.020, .046, .060. To recover for a fear of impending death, the plaintiff must show the decedent had a conscious realization of his or her imminent death and that conscious realization caused suffering. *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 837, 699 P.2d 1230 (1985); *Otani ex rel. v. Broudy*, 151 Wn.2d 750, 758, 92 P.3d 192 (2004).

In *Bingaman*, the surviving husband and two sons brought a survival action on behalf of his wife's estate for her untimely death as a result of complications from childbirth. 103 Wn.2d at 833. In support of its recovery, the Bingaman estate presented uncontroverted evidence that Bingaman screamed in pain to the nurses for help, regained consciousness after three separate grand mal seizures during a three-hour period, and said to a patient in the bed next to her, "I'm dying. I know I'm dying. Why can't they help me? What is the matter with me?" *Id.* at 834. The

---

[10] Lamotte does not join in the Rashoffs' pre-death pain and suffering claim. Br. of Appellant Lamotte at i-2.

*Bingaman* court held this was substantial evidence from which a jury could find that Bingaman "not only suffered extreme conscious pain, fear and despair at not being helped, but also had the conscious realization her life and everything fine that it encompassed was prematurely ending." *Id.* at 837-38.

Here, the Rashoffs' claim fails because the Rashoffs only present speculation that Ryan could have known he was going to die before he did. Gill stated in his declaration, "Ryan Rashoff had a number of visual and auditory cues *available to him* that would *most likely* have alerted him to the impending collision." CP at 440 (emphasis added). No evidence was presented that Ryan took advantage of any of these cues. The evidence shows Ryan never regained consciousness after the collision, and died moments after. This leaves Lamotte as the only person who could know whether Ryan had a conscious realization of his impending death, but the evidence shows that Lamotte does not have a memory of the accident beyond initially stopping at the intersection.

The law requires the plaintiff in survival actions such as this to present evidence of the decedent's conscious realization of his or her impending death and suffering from that realization. *See Bingaman*, 103 Wn.2d at 837; *Otani*, 151 Wn.2d at 758. The Rashoffs fail to present evidence that Ryan realized he was going to die and suffered therefrom. Gill's testimony that cues were "available" that would have "most likely" alerted Ryan, is nothing more than speculation, and non-moving parties may not rely on speculation to survive summary judgment motions. *Seven Gables*, 106 Wn.2d at 13. Therefore, we affirm the superior court's summary judgment dismissal of Rashoff's claim for pre-death damages.

## CONCLUSION

We reverse the superior court's summary judgment dismissal of appellants' negligence claim against WSDOT and remand for trial on that issue.  But, we affirm the superior court's summary judgment dismissal of the Rashoffs' claim for pre-death damages.

A majority of the panel having determined that this opinion will not be published in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.