# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JANE CHO, )
)  No. 70727-2-I
    Appellant, )
)  DIVISION ONE
    v. )
)  UNPUBLISHED OPINION
THE CITY OF SEATTLE, )
)
    Respondent, )
)
JUANITA WRIGHT a/k/a JUANITA L. )
MARS a/ka JUANITA CARPENTER and )
JOHN DOE WRIGHT, husband and )
wife; and SHOWBOX TWO LLC a/k/a )
"SHOWBOX" and JOHN AND JANE )
DOES 1-10, )
)
)  FILED: October 20, 2014
    Defendants. )

TRICKEY, J. — A party must provide sufficient competent evidence to establish the essential elements of the action, or at the very least, a genuine issue of material facts as to those elements. Here, an inattentive drunk driver struck the plaintiff and several pedestrians in an unmarked crosswalk. The plaintiff's assertion that had the city of Seattle (City) installed a pedestrian island, she would have stopped and waited for all oncoming traffic to proceed before continuing to cross the street, is speculation that does not establish proximate cause. Further, under the circumstances here, where traffic had already stopped to permit pedestrians to proceed across the street and several were in the process of doing so when defendant's vehicle struck them, an island would not have prevented the accident. Nor would a traffic light have helped since the driver unequivocally stated that she was not looking ahead before she struck the pedestrians. Summary judgment dismissal of the plaintiff's claims against the City was proper.

FACTS

On October 28, 2010, a drunk driver, Juanita Carpenter a/k/a Juanita Mars (Mars), struck and hit Jane Cho and other pedestrians crossing First Avenue South in a lighted, unmarked crosswalk. The complaint stated that Cho was walking westbound on a public street, within an unmarked crosswalk. She had already crossed the northbound lanes and one-half of the southbound lanes of First Avenue South when Mars' vehicle struck her and four other pedestrians.[1]

Mars was charged with multiple felonies as a result of the drunk-driving accident.[2] On February 1, 2011, she signed and filed a statement of defendant on plea of guilty (nonfelony) as to the charge of reckless driving (count IV), stating:

> In King, County, WA on 10/28/10, I drove in willful and wanton disregard for the safety of people and property. I was driving on 1st Avenue downtown after drinking alcohol, to wit: I knew I was drinking to excess and was not focusing on my driving and failed to slow while approaching an intersection with a large group of pedestrians and ignored the waving of a construction worker.[3]

On February 22, 2011, Mars pleaded guilty to multiple criminal counts of vehicular assault-DUI (counts I, II, III). At entry of her plea to these crimes, Mars signed a statement:

> (1) In King County, WA, on 10/28/10, I drove a motor vehicle while under the influence of alcohol and caused substantial bodily harm to Joanne Wegner and Timothy Syverson, when I was driving on 1st Ave. I had consumed alcohol and was driving downtown when I hit Ms. Wegner and Mr. Syverson.
> (2) In the same place and time, in King County, I drove a motor vehicle while under the influence of alcohol and caused substantial bodily harm to Judy Ha. I was drunk and driving on 1st Ave, when I hit Ms. Ha.

---

[1] Clerk's Papers (CP) at 4, 109.
[2] CP at 107-8.
[3] CP at 75.

2

(3) In King County, WA, in the same place and time, I was driving a motor vehicle under the influence of alcohol and caused substantial bodily harm to Jane Cho. I was driving drunk on 1st Avenue, when I hit Ms. Cho.[4]

Mars had a blood-alcohol level of 0.29, three and half times the legal limit.[5]

Showbox employees testified that it was difficult to cross First Avenue South prior to the City's installation of lights at that crossing.[6] However, this difficulty arose during sporting events. There were no sporting events that evening. Showbox has room for 1,600 to 2,000 people.[7] The show was close to sold out if not sold out.[8] A witness testified that the pickup driven by Mars did not slow down until after it struck the pedestrians.[9]

Both Showbox and the City moved for summary judgment. The trial court granted both motions and dismissed the action. Cho appeals only the dismissal of her negligence claims against the City. The City contends that its failure to install a light, pedestrian crossing, or an island did not proximately cause the accident.

ANALYSIS

Standard of Review

A motion for summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

---

[4] CP at 104-5.
[5] CP at 111.
[6] CP at 150, 226.
[7] CP at 154, 180, 219.
[8] CP at 187, 219 (one Showbox employee stated venue was half full).
[9] CP at 168.

3

In a motion for summary judgment, the moving party bears the initial burden of showing that no material fact exists. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then moves to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In meeting this burden, the nonmoving party cannot rely solely on allegations made in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Young, 112 Wn.2d at 225 (quoting CR 56(e)). If the nonmoving party does not meet its burden, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Young, 112 Wn.2d at 225 (internal quotation marks omitted) (quoting Celotex Corp., 477 U.S. at 322-23).

This court reviews summary judgment orders de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013); Ellis v. City of Seattle, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Issues of negligence and causation in tort actions are questions of fact not usually susceptible to summary judgment, but a question of fact may be determined as a matter of law where reasonable minds can reach only one conclusion. Moore v. Hagge, 158 Wn. App. 137, 147-48, 241 P.3d 787 (2010). "Questions of fact may be determined as a matter of law 'when reasonable minds could reach but one conclusion.'" Owen v. Burlington N. Santa

4

Fe R.R. Co., 153 Wn.2d 780, 788, 108 P.3d 1220 (2005) (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

Proximate Cause

The fact that an accident occurred does not, by itself, necessarily give rise to an inference of negligence. Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377, 972 P.2d 475 (1999). In order to prevail on her negligence claim, Cho must prove duty, breach, causation, and injury. Schooley v. Pinch's Deli Market, Inc., 134 Wn.2d 468, 474, 951 P.2d 749 (1998). The trial court granted the City's motion for summary judgment because it found no genuine issue of material fact as to proximate cause.

Proximate cause contains two separate elements: cause in fact and legal causation. Hartley, 103 Wn.2d at 777. Cause in fact, is, in addition to legal causation, an element of proximate cause. It "refers to 'the physical connection between an act and an injury.'" M.H. v. Corp. of Catholic Archbishop of Seattle, 162 Wn. App. 183, 194, 252 P.3d 914 (20110 (internal quotation marks omitted) (quoting Ang v. Martin, 154 Wn.2d 477, 482, 114 P.3d 637 (2005)). Cause in fact is usually a question for the jury, but it may be decided as a matter of law if the causal connection between the act and the injury is "'so speculative and indirect that reasonable minds could not differ.'" Moore, 158 Wn. App. at 148 (internal quotation marks omitted) (quoting Doherty v. Mun. of Metro. Seattle, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996)). "The cause of [the] accident [is] speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another." Moore, 158 Wn. App. at 148 (internal quotation marks omitted)

5

(quoting Jankelson v. Sisters of Charity of House of Providence in Territory of Wash., 17 Wn.2d 631, 643, 136 P.2d 720 (1943)).

The situation here is similar to that in Garcia v. State Department of Transportation, 161 Wn. App. 1, 270 P.3d 599 (2011). In Garcia, a driver struck and killed a pedestrian while in the crosswalk. Prior to the accident, the city of Shoreline had conducted a pedestrian safety study. As a result, the city had taken various actions including obtaining a variance to install a roving eyes pedestrian alert device (an overhead Led (light emitting diode) display that flashes when a pedestrian enters the crosswalk). Garcia, 161 Wn. App. at 4-5. At the time of the accident, the roving eyes device was disabled as it was not operating correctly. The driver admitted she was talking to the person in the passenger seat and was not paying attention or looking ahead. As a result, she failed to notice the three cars stopped in the next lane at the crosswalk and did not see the pedestrian. Garcia, 161 Wn. App. at 6. Garcia held it was the driver's inattentiveness that was the proximate cause of the accident and the argument that the roving eyes device would have prevented the accident was too attenuated to impose liability. Garcia, 161 Wn. App. at 16.

An analogy can also be drawn to Tortes v. King County, 119 Wn. App. 1, 84 P.3d 252 (2003). Tortes involved an action by a passenger on a Municipality of Metropolitan Seattle (Metro) bus that plunged off the Aurora Avenue Bridge when another passenger shot and killed the driver. The cause in fact of the accident was the other passenger's shooting the bus driver. There was no claim that Metro was the cause in fact of the accident; "[r]ather, there was only

6

speculation as to what Metro should have done to prevent the shooting and the accident." Tortes, 119 Wn. App. at 9. This was insufficient to establish cause in fact.

Similarly, here, Cho's theory of liability against the City consists of only speculation as to what the City should have done to prevent the accident. Such speculation does not establish cause in fact. Mars was not paying attention. She stated she was crying and constantly drying her face because of the tears. She was "surprised [she] even saw the road through all the tears and the headache."[10] She stated that she "was not in any shape [and] never should have got[ten] behind the wheel.[11]

Mars further stated that before the point of impact, she was yelling at the front seat passenger and was not looking ahead or paying attention:

> Q. Did you have your head turned towards them just before the accident, or do you know?
> A. Yeah, actually I did, because I told Toni to shut the hell up, because she was in the front seat.
> Q. What was your first indication that you had struck somebody? Did you hear it or feel it?
> A. The thump, I heard it. And I was like what the hell? And they looked at me. So I'm like they didn't say anything, either. And so I just -- I don't think they saw them, either, because nobody said anything.[12]

In addition to not looking at the road, Mars was severely impaired by a blood alcohol level of 0.29 percent.[13]

---

[10] CP at 389.
[11] CP at 392.
[12] CP at 397 (Mars Deposition).
[13] CP 111. Cho cites to Mars' testimony that she had no problems driving, stopped at every light, and stayed in her lane.
> I don't know SoDo. So they were irritating me, because when I came up and over the West Seattle Bridge, the big bridge, I meant to just

Specifically, Cho testified that had there been a pedestrian island, she would have used it, stopped, and waited for all the traffic to pass through the crosswalk before continuing.[14] Likewise, Cho asserted that if there had been a signal at the intersection, she would have pushed the button and waited; if no pedestrian signal, she would have waited for a green light before crossing.[15] These statements are speculative and given the circumstances here, where one lane of traffic had already stopped yielding to the pedestrians and multiple pedestrians were crossing the road, it is not reasonable to suppose that under those circumstances, Cho, alone, would have waited for traffic to clear.

Expert Testimony

Cho also argues that but for the City's failure to install a traffic light or personnel to control the traffic, the accident would not have occurred. To support this theory, Cho presented a declaration from Dr. William Vigilante, Jr., a human factors expert, who opined that Mars' successful navigation between her home in West Seattle and the place of impact was evidence of Mars' ability to successfully complete turns, navigate high speed roadways, respond to traffic signals, and

---

take the First Avenue exit. They had me so stressed out and upset with their yakking, I wound up on the viaduct. And I was like great.

So I got off the viaduct, came down First Avenue. No problems driving, stopped at every light, stayed in my lane listening to them yak. And the closer we got, the more I wanted to hurt them. Their arguing was really starting to piss me off to the tune where I was starting to see red. And the only thing I wanted to do was pull my truck over and beat the hell out of them.

So I figured I was somewhere close to wherever they were going. And that's when the accident happened.

CP at 175.

[14] CP at 270 (Cho Declaration).

[15] CP at 270.

negotiate narrow roadways.[16] Therefore, he concluded that Mars was an attentive driver and demonstrated an ability to respond to future traffic controls such as traffic signals, had there been any at the point of impact.[17] This position, however, is clearly contradicted by Mars' only statements that she was not paying attention and was not looking ahead at the road.

Cho also presented a declaration from Daniel Melcher, Armstrong Forensic Engineers, Inc., who opined that a red light would have likely prevented the collision.[18] Melcher's report cites a briefing memo from the Seattle Department of Transportation showing that in 2007, the City planned to make changes to 21 crosswalks, including the removal of a marked crosswalk at First Avenue South and South Massachusetts Street because of little or no public interest.[19] One citizen complained about the removal, but attempts by the City to contact that individual failed and no action was taken on the complaint.[20] The report also noted that installation of a marked crosswalk does not solve pedestrian crossing problems.[21] The report concluded that the City failed to properly study the intersection, and that curb bulbs and a median refuge island might have been a refuge area for pedestrians to determine if there were available gaps in traffic.[22] The conclusion that the presence of an island would have prevented this accident is speculative because it relies on the pedestrian stopping in the circumstances

---

[16] CP at 312.
[17] CP at 312-13.
[18] CP at 318.
[19] CP at 334 (Armstrong Report).
[20] CP at 334-35.
[21] CP at 336.
[22] CP at 340.

present at the time. Here, the crowds were crossing the streets and traffic had stopped in the other lane permitting them to do so.

In order to preclude summary judgment, an expert's affidavit must include more than mere speculation or conclusory statements. See Dunlap v. Wayne, 105 Wn.2d 529, 536, 716 P.2d 842 (1986) (affidavits summited in opposition to summary judgment must set forth facts that would be admissible in evidence). Because the experts' declarations contain only conclusory allegations, unsupported by any supporting facts, it does not create an inference that had there been a red light, Mars, who was not looking ahead, would have stopped. Nor is there any evidence to lend credence to the speculation that had there been a pedestrian island, Cho would have waited for all oncoming traffic to pass. Under the circumstances here, such an action is highly speculative.

Cho's arguments are similar to arguments that have been repeatedly rejected in accident cases where the plaintiff seeks to hold a government body liable on the ground of failure to provide a safe roadway. In Miller v. Likins, 109 Wn. App. 140, 34 P.3d 835 (2001), Johanson v. King County, 7 Wn.2d 111, 109 P.2d 307 (1941), and Kristjanson v. City of Seattle, 25 Wn. App. 324, 606 P.2d 283 (1980), the most that the plaintiff could show was that the accident might not have happened had the governmental body taken certain steps, such as installing raised pavement markings, lowering the speed limit, posting additional road signs, or removing old road lines. In each case, the courts decided that the plaintiff failed to meet his or her burden of showing that the governmental body's negligence was

the cause in fact of the plaintiff's injuries. The same is true with respect to Cho's claims against the City. Her speculation is insufficient to show cause in fact.

Cho argues that the Supreme Court's recent case, Lowman v. Wilber, 178 Wn.2d 165, 309 P.3d 387 (2013), supports her position against summary judgment. Lowman sued Puget Sound Energy and the county for injuries sustained in an automobile accident caused by an alcohol impaired driver who was speeding, lost control of the car, and hit a utility pole. But Lowman is distinguishable. In Lowman, the county stipulated to the fact that the pole was the cause in fact of the injuries sustained. The Lowman court held that if a jury found negligent placement of a utility pole was a cause of the plaintiff's injuries it was not "too remote for purposes of legal causation." 178 Wn.2d at 171. If a cause in fact is established and the injuries fall within the scope of duty owed, "there is no basis to foreclose liability." Lowman, 178 Wn.2d at 172. Unlike Lowman, here, the City disputes the cause in fact.

Cho argues that Unger v. Cauchon, 118 Wn. App. 165, 73 P.3d 1005 (2003), is more similar to this case. Unger held that the county owed a duty to a motorist regardless of his negligent conduct in bad weather. 118 Wn. App. at 175-76. The speed of the vehicle and the reason for Unger's loss of control of that vehicle were disputed. Further, evidence in the record showed that the road was not maintained in a safe condition the night of the accident and on other rainy days. Unger, 118 Wn. App. at 176-77. The driver who discovered Unger's body testified that her car swerved when it hit the wash out. Unger, 118 Wn. App. at 177. Other witnesses stated that the drain culvert had been plugged for several years causing

11

flooding when heavy rains occurred. Unger, 118 Wn. App. at 177. No such facts are present here. The City was entitled to summary judgment dismissal of Cho's negligence claim.

Affirmed.

Trickey, J

WE CONCUR: