

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFREY BURKE and KIMBERLY BURKE, a married couple, ) ) | No. 72858-0-I |
| Appellants, ) | DIVISION ONE |
| v. ) | UNPUBLISHED OPINION |
| DALYNNE SINGLETON, as Personal Representative of the ESTATE OF CHARLES ELFRINK-THOMPSON, deceased, and THE CITY OF SEATTLE, a municipal corporation, and JOHN DOES and JANE DOES 1 through 10, inclusive, ) ) ) ) ) ) ) | |
| Respondents. ) | FILED: January 19, 2016 |

LEACH, J. — Jeffrey and Kimberley Burke appeal the trial court's summary dismissal of their negligence suit against the City of Seattle and the estate of its deceased employee Charles Elfrink-Thompson (collectively City). Jeffrey Burke suffered injuries when a truck driven by Elfrink-Thompson crossed the center line and struck Jeffrey's[1] van while rounding a curve in the opposite direction. Elfrink-Thompson suffered a traumatic brain injury and died the next day.

The Burkes offer three reasons for reversing the trial court: first, res ipsa loquitur supplies an inference of negligence in this case; second, the testimony of their expert witness establishes Elfrink-Thompson's negligence as the cause of

---

[1] For clarity, we refer to Mr. Burke individually by his first name.

the collision; and third, for the first time in their reply brief, Elfrink-Thompson's undisputed violation of traffic laws provides evidence of negligence, precluding summary judgment. The City disputes these claims and also asserts sudden incapacity as an alternative reason to affirm the trial court.

Much of the parties' briefing addresses res ipsa loquitur, but this case does not involve any "peculiar and exceptional" facts to which the doctrine properly applies. We reject res ipsa loquitur as a basis for reversal.

The Burkes contend the trial court erred by excluding testimony from their accident reconstructionist, Steve Harbinson, which demonstrated that Elfrink-Thompson probably caused the accident because he was speeding or distracted. Because Harbinson applied his expertise as an accident reconstructionist to the evidence to reach this conclusion, the trial court abused its discretion in excluding Harbinson's testimony.

Normally, this court declines to consider arguments raised for the first time in a reply brief. We do so here because the ends of justice require it. Both Jeffrey's testimony and that of the accident investigator showed that Elfrink-Thompson violated traffic laws before and during the accident. Although Washington has eliminated negligence per se, evidence of a statutory violation still provides evidence of negligence. Therefore, the Burkes demonstrated a genuine issue of material fact as to breach preventing summary judgment.

Finally, the City contends it has a complete defense of sudden incapacity based on testimony that Elfrink-Thompson likely suffered a mild heart attack just before the accident. But because testimony from the Burkes' expert establishes a genuine issue of material fact, we disagree. We reverse and remand for further proceedings.

## FACTS

On April 21, 2010, a truck driven by Charles Elfrink-Thompson collided with a van driven by Jeffrey Burke on Olsen Place SW in West Seattle. Elfrink-Thompson lost control of his vehicle, which rotated as it drifted across the center line. The City-owned truck appeared to be "fishtailing" on wet pavement. Jeffrey was unable to avoid the truck, which collided with his van. Elfrink-Thompson suffered a traumatic brain injury and died the next day. The City concedes that Elfrink-Thompson was a City employee acting within the course and scope of his employment.

The Seattle Police Department Traffic Collision Investigation Squad (TCIS) investigated the collision. It found signs consistent with the above account: a 41-foot-long tire mark running from Elfrink-Thompson's lane, crossing the center line, and ending where the vehicles came to rest, and a scuff mark where Elfrink-Thompson lost control of the truck. But the TCIS detectives could not determine the reason Elfrink-Thompson lost control. The truck's sensing and

diagnostic module did not record any data on the truck's braking and throttle functions and so did not indicate the truck's speed immediately before impact. No one saw Elfrink-Thompson's behavior before the collision. A forensic examination showed his cell phone was not in use, and a toxicology report came up negative for drugs and alcohol. A mechanic found no defects in the truck's brakes, tires, suspension, or steering.

The Burkes obtained the opinion of an expert, Steve Harbinson, about the causes of the accident. Harbinson is a police officer and accident reconstructionist for the Edmonds Police Department. Harbinson reviewed documents on the crash and statements by Jeffrey. From this review and his experience, he concluded that Elfrink-Thompson probably lost control of the truck because he was distracted or driving too fast.

The City offered testimony from Carol Buchter, a cardiologist who reviewed the accident records and Elfrink-Thompson's medical records and autopsy report. Dr. Buchter opined that these records indicated Elfrink-Thompson had suffered a myocardial injury by the time he died. Dr. Buchter concluded that Elfrink-Thompson probably lost control of the truck after a myocardial infarction rendered him unconscious.

In response, the Burkes submitted a declaration by Marshall Corson, a cardiologist at Harborview Medical Center (HMC), where Elfrink-Thompson was

-4-

treated. Corson "check-read" Elfrink-Thompson's electrocardiogram (ECG) report in the course of checking all 100 or so reports generated by HMC's ECG machines that day. Corson had no contact with Elfrink-Thompson or the trauma team treating him. After reviewing Elfrink-Thompson's medical records, Dr. Buchter's declaration, and the police collision report, Dr. Corson concluded that Elfrink-Thompson likely did <u>not</u> suffer a myocardial infarction before the crash and that his traumatic brain injury probably explained the data Dr. Buchter relied on.

The trial court granted the City's motion for summary judgment, and the Burkes appeal.

## STANDARD OF REVIEW

An appeal of a summary judgment presents a question of law this court reviews de novo.[2] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] We view facts in the light most favorable to the nonmoving party.[4] The purpose of summary judgment is not to cut litigants off from their right of trial by jury but to determine if they really have evidence to offer at trial.[5] Whether res ipsa loquitur

---

[2] <u>Osborn v. Mason County</u>, 157 Wn.2d 18, 22, 134 P.3d 197 (2006).
[3] CR 56(c); <u>Osborn</u>, 157 Wn.2d at 22.
[4] <u>Osborn</u>, 157 Wn.2d at 22.
[5] <u>Keck v. Collins</u>, 184 Wn.2d 358, 369, 357 P.3d 1080 (2015) (quoting <u>Preston v. Duncan</u>, 55 Wn.2d 678, 683, 349 P.2d 605 (1960)).

applies to a particular case also presents a question of law we review de novo.[6]

We review trial court rulings on the admissibility of expert testimony for abuse of

discretion.[7]

Normally, we do not consider issues raised and argued for the first time in

a reply brief.[8] Courts follow this practice out of fairness to the respondent, who

has no opportunity to argue in response.[9] But this court may review an issue first

raised in the reply brief if "'the ends of justice'" so require.[10] Because the briefing

in this case failed to give adequate attention to a decisive issue and because the

numerous fact disputes make summary judgment particularly inappropriate here,

the ends of justice compel us to consider an argument the Burkes raise for the

first time in their reply. We asked the parties for oral argument in part to give the

City an opportunity to address that argument.

## ANALYSIS

The City had the burden of showing no genuine issue of material fact

existed as to some element of the Burkes' negligence case. Negligence has four

---

[6] Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003).

[7] Miller v. Likins, 109 Wn. App. 140, 147, 34 P.3d 835 (2001).

[8] Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014); In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990); RAP 10.3(c).

[9] City of Spokane v. White, 102 Wn. App. 955, 963, 10 P.3d 1095 (2000).

[10] State v. Haberman, 105 Wn. App. 926, 933, 22 P.3d 264 (2001); RAP 1.2(c).

elements: duty, breach, causation, and injury.[11] The City contends that the Burkes failed to present evidence sufficient to create a genuine issue of material fact as to breach.

Violation of Traffic Laws as Evidence of Negligence

The Burkes contend for the first time in their reply that Elfrink-Thompson's violation of traffic laws by swerving into Jeffrey's lane provides evidence of negligence sufficient to preclude summary judgment. As discussed above, we consider this argument because declining to do so would deny justice to a needy party.[12]

"A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence."[13] Washington traffic laws require that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane" and may not be driven in the left lane in a no-passing zone.[14]

Jeffrey testified that he saw Elfrink-Thompson's truck fishtail and swerve into his lane. The collision itself occurred in Jeffrey's lane. Viewed in the light most favorable to the Burkes, this evidence would establish that Elfrink-

[11] Keller v. City of Spokane, 146 Wn.2d 237, 242, 44 P.3d 845 (2002).
[12] RAP 1.2(c).
[13] RCW 5.40.050; see Pettit v. Dwoskin, 116 Wn. App. 466, 475, 68 P.3d 1088 (2003).
[14] RCW 46.61.140(1), .130.

-7-

Thompson breached a duty under Washington traffic laws. This breach "may be considered by the trier of fact as evidence of negligence."[15]

The City contends that Mathis v. Ammons[16] supports summary judgment despite the evidence that Elfrink-Thompson violated traffic laws. In Mathis, Division Two upheld the trial court's entry of judgment on a jury's verdict that a tractor driver was not negligent despite violating a statute that required flashing hazard lights.[17] Mathis shows only that evidence of a statutory violation does not prove negligence as a matter of law.[18] It can defeat a motion for summary judgment where the question is not if the violation shows negligence as a matter of law but instead whether a genuine issue of material fact exists about negligence. Evidence of Elfrink-Thompson's statutory violation is evidence, not complete proof, of his negligence.[19] This is all the Burkes needed to produce at the summary judgment stage. The trial court thus erred in granting the City summary judgment.

---

[15] RCW 5.40.050.

[16] 84 Wn. App. 411, 928 P.2d 431 (1996).

[17] Mathis, 84 Wn. App. at 419-20.

[18] The City correctly points out that the legislature abolished negligence per se in 1986. Hansen v. Friend, 118 Wn.2d 476, 483, 824 P.2d 483 (1992).

[19] See RCW 5.40.050. "Proof" is "[t]he establishment or refutation of an alleged fact by evidence." BLACK'S LAW DICTIONARY 1409 (10th ed. 2014).

Res Ipsa Loquitur

The parties devote much of their briefing to res ipsa loquitur. But this is not a "'peculiar and exceptional case[ ]'" to which res ipsa loquitur applies.[20]

Res ipsa loquitur allows a plaintiff to circumstantially establish a prima facie case of negligence by the defendant without further direct proof.[21] It spares the plaintiff from proving specific acts of negligence and shifts the burden to the defendant to provide an explanation.[22] Courts apply res ipsa loquitur "'sparingly . . . in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential.'"[23]

Res ipsa loquitur applies where the party promoting it establishes three elements: (1) the occurrence producing the injury was of a kind that ordinarily does not occur in the absence of negligence, (2) the injury was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing occurrence was not due to any contribution of the injured party.[24] If any of these elements is missing, a presumption of negligence is

---

[20] See The-Anh Nguyen v. City of Seattle, 179 Wn. App. 155, 173, 317 P.3d 518 (2014) (alteration in original) (internal quotation marks omitted) (quoting Curtis v. Lien, 169 Wn.2d 884, 889, 239 P.3d 1078 (2010)).

[21] Curtis, 169 Wn.2d at 894 (quoting Pacheco, 149 Wn.2d at 440-41).

[22] Curtis, 169 Wn.2d at 894.

[23] Curtis, 169 Wn.2d at 889 (internal quotation marks omitted) (quoting Tinder v. Nordstrom, Inc., 84 Wn. App. 787, 792, 929 P.2d 1209 (1997)).

[24] Pacheco, 149 Wn.2d at 436-37 (quoting Zukowsky v. Brown, 79 Wn.2d 586, 593, 488 P.2d 269 (1971)).

unwarranted. The second and third elements are not contested here: the City concedes that Elfrink-Thompson had exclusive control of the truck and does not contend that Jeffrey was at fault.

The first element can be met in three ways:

"(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries."[25]

The Burkes do not show the presence of any of these factors. First, a car accident is not "so palpably negligent that it may be inferred as a matter of law" like leaving a sponge in a patient or amputating the wrong leg.[26] Rather, a plaintiff suing for negligence in a car accident still must prove duty, breach, causation, and injury.[27] Second, the Burkes cite no case holding that in the "general experience and observation of mankind" a driver does not lose control of his vehicle without negligence. Given the unfortunate frequency of car accidents, we decline to do so here. And third, car accidents are not "an esoteric field" such that expert testimony would create an inference of negligence. Including car

---

[25] Pacheco, 149 Wn.2d at 438-39 (internal quotation marks omitted) (quoting Zukowsky, 79 Wn.2d at 595).

[26] See Cho v. City of Seattle, 185 Wn. App. 10, 16, 341 P.3d 309 (2014) ("The fact that an accident occurred does not, by itself, necessarily give rise to an inference of negligence."), review denied, 183 Wn.2d 1007 (2015).

[27] Cho, 185 Wn. App. at 16.

accidents in that category would make the narrow qualifier "esoteric" effectively meaningless.

The Burkes' Accident Reconstructionist

The Burkes also challenge the trial court's exclusion of their expert Steve Harbinson's testimony that Elfrink-Thompson was likely speeding or distracted when he crashed. Harbinson based his opinion on a scaled diagram of the collision scene, the photographs taken immediately after the crash, his experience, and Jeffrey's observations. He admitted having seen no physical evidence that Elfrink-Thompson lost control because he was distracted or speeding. The trial court excluded Harbinson's testimony as speculative and lacking an adequate factual basis.

This court upheld exclusions of testimony from plaintiffs' experts as speculative in Cho v. City of Seattle[28] and Miller v. Likins.[29] In Cho, the experts indicated that had the city installed a pedestrian island, the plaintiff would have stopped and waited for traffic to proceed before attempting to cross the street and that had the city installed a traffic light, the drunk driver would have stopped at it.[30] This court found that the experts' testimony "contain[ed] only conclusory

---

[28] 185 Wn. App. 10, 20, 341 P.3d 309 (2014), review denied, 183 Wn.2d 1007 (2015).
[29] 109 Wn. App. 140, 149-50, 34 P.3d 835 (2001).
[30] Cho, 185 Wn. App. at 19-20.

allegations, unsupported by . . . facts."[31] In Miller, an accident reconstructionist testified that in his opinion the defendant's car struck the plaintiff on the shoulder of the road, not the roadway.[32] The expert admitted the physical evidence fit the defendant's claim that the plaintiff was standing in the street when he was hit, just as well as it fit the plaintiff's claim that he had been standing on the shoulder.[33] Noting the expert based his testimony entirely on one witness's declaration, this court affirmed the trial court's finding that the expert's opinion was speculative and lacked an adequate factual basis.[34]

Here, however, Harbinson's testimony was not speculative. Thus, the trial court abused its discretion in excluding it. We distinguish Cho and Miller. Neither case involved testimony about the likely cause of an accident, applying the witness's expertise to photos and witness statements. Rather, the experts in Cho speculated about what certain actors would have done had the city installed safety features.[35] This court properly held that the experts' conclusions lacked an adequate factual basis. The expert in Miller did not testify about the likely cause of the accident but to where on the road the plaintiff was standing when struck.[36] The expert based his opinion on the testimony of a single witness, not

---

[31] Cho, 185 Wn. App. at 20.
[32] Miller, 109 Wn. App. at 149-50.
[33] Miller, 109 Wn. App. at 149.
[34] Miller, 109 Wn. App. at 149-50.
[35] Cho, 185 Wn. App. at 20.
[36] Miller, 109 Wn. App. at 149-50.

on the physical evidence. Thus, this court found that he based his opinion solely on a decision to credit that witness, not on his expertise as applied to the facts. In contrast, Harbinson made a complete review of the accident file, including accident photos and the terrain of the hill, in addition to considering Jeffrey's testimony. Harbinson applied his expertise as an accident reconstructionist to this evidence to conclude that Elfrink-Thompson probably lost control because he was distracted or speeding. The trial court therefore abused its discretion in excluding Harbinson's testimony.

## The City's Sudden-Incapacity Defense

The City argues that even if the Burkes can show a prima facie case of negligence, it has a complete defense of sudden incapacity based on Dr. Buchter's testimony. In response, the Burkes point to Dr. Corson's expert testimony drawing the opposite conclusion.

Viewing the facts in the light most favorable to the Burkes, the record shows a factual dispute about the City's defense of sudden incapacity, making summary judgment inappropriate. Dr. Corson's declaration creates a genuine issue of material fact as to whether Elfrink-Thompson suffered a heart attack that caused him to lose control of the truck.

The City contends that Dr. Corson's testimony would be inadmissible at trial as the product of ex parte contact between counsel and a treating physician

of the opposing party. A court can consider only admissible evidence when ruling on a motion for summary judgment.[37] In <u>Loudon v. Mhyre</u>,[38] the Supreme Court held that defense counsel may not engage in ex parte contact with the plaintiff's treating physician in a personal injury action. The City asserts that this rule should apply here even though the contact was between counsel for a plaintiff and a physician who read the medical records of the defendants' decedent. The City further contends that Dr. Corson is a treating physician because the Burkes identified him on a witness list in discovery as someone who may testify to Elfrink-Thompson's treatment or medical records and because he appears to fall under the definition of "health care provider" in the medical torts statute.[39]

The Burkes deny that Dr. Corson was a treating physician. Dr. Corson never met Elfrink-Thompson or his family or assisted in his treatment. Dr. Corson only read Elfrink-Thompson's ECG tracings, among 100 or more others that day, to "check that the data in the software-generated interpretation report [wa]s correct."

The Supreme Court in <u>Loudon</u> justified its prohibition of ex parte contacts with treating physicians because "[t]he mere threat that a physician might engage

---

[37] <u>Burmeister v. State Farm Ins. Co.</u>, 92 Wn. App. 359, 365, 966 P.2d 921 (1998).

[38] 110 Wn.2d 675, 675-76, 756 P.2d 138 (1988).

[39] RCW 7.70.020(3).

-14-

in private interviews with defense counsel would, for some, have a chilling effect on the physician-patient relationship and hinder further treatment."[40] The court has since provided three more justifications:  protecting the doctor-patient fiduciary relationship, protecting doctors from potential liability for wrongful disclosures, and avoiding situations where defense counsel would be called to testify as an impeachment witness.[41]

We reject the City's proposed application of the Loudon rule here.  We agree with the Burkes that Dr. Corson was not a "treating physician."  Even if we agree that the Loudon rule can apply to contacts between a plaintiff's attorney and a treating physician of the defendants' decedent, the City cites no case applying that rule to a physician with such a tangential connection to the patient. And none of the justifications for the Loudon rule would justify extending it to Dr. Corson:  allowing counsel to contact a doctor who reviews a patient's ECG tracings among 100 others and has no interaction with the patient or effect on the patient's treatment would not affect the doctor-patient relationship in the ways Loudon was concerned with.

## CONCLUSION

Because the Burkes' evidence that Elfrink-Thompson crossed the center line created a genuine issue of material fact as to breach, the trial court erred in

---

[40] Loudon, 110 Wn.2d at 679.
[41] Youngs v. PeaceHealth, 179 Wn.2d 645, 659-60, 316 P.3d 1035 (2014).

granting summary judgment for the City. And because genuine issues of material fact exist about the City's sudden-incapacity defense, we decline to affirm summary judgment on the basis of this defense. We therefore reverse and remand for further proceedings.

_Leach, J._

WE CONCUR:

_Dwyer, J._                    _Schindler, J._