# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PENNY ARNESON f/k/a PENNY
ARNESON SWEET, on behalf of herself
personally and on behalf of The 6708
Tolt Highlands Personal Residence
Trust,

Appellant,

v.

GARY NORDLUND,

Respondent,

MFE, LLC; COLUMBIA NORTH WEST
MORTGAGE; MARK D. FLYNN; L80
COLLECTIONS, LLC; ALDENTE, LLC;
ROGER MAY and "JANE DOE" MAY;
McGAVICK GRAVES, P.S. and DOE
DEFENDANTS 1 through 20,

Defendants.

DIVISION ONE

No. 78053-1-I

UNPUBLISHED OPINION

FILED: September 3, 2019

DWYER, J. — Penny Arneson, in her capacity as trustee of the 6708 Tolt

Highlands Personal Residence Trust (the Trust), brought suit against Gary

Nordlund to enjoin Nordlund's nonjudicial foreclosure of the Trust's real property

and to allege that Nordlund committed usury and unlicensed lending—both

violations of the Consumer Protection Act (CPA).[1]  The trial court initially enjoined

---

[1] Chapter 19.86 RCW.

the foreclosure but subsequently granted summary judgment to Nordlund, dismissing all claims. The Trust appealed. We reversed.

On remand, the trial court granted Nordlund's motions for summary judgment dismissal of the Trust's usury and assumpsit claims and, following a jury trial, entered judgment for Nordlund, dismissing the CPA claim predicated upon a violation of the Consumer Loan Act (CLA).[2] The Trust again appeals. We reverse the trial court's grants of summary judgment as to the usury and assumpsit claims but affirm the judgment as to the dismissal of the CPA claim.

I

The underlying facts of the parties' dispute are set forth in our opinion in Arneson v. Nordlund (Arneson I), No. 71148-1-I (Wash. Ct. App. March 30, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/711482.pdf, but will be briefly summarized here. Arneson's former husband Kenneth Sweet, as a co-trustee of the Trust, arranged for a loan from Aldente, LLC, to the Trust. Then, to facilitate repayment of this loan, he arranged a second loan from Gary Nordlund to the Trust in the amount of $375,000.00. Nordlund's loan was secured by a deed of trust against the Trust's real property at 6708 Tolt Highlands Road N.E. in Carnation, Washington. The Trust defaulted on this loan and Nordlund initiated a nonjudicial foreclosure on the deed of trust. Arneson, both as an individual and in her capacity as trustee of the Trust, then filed this suit to enjoin the trustee's sale and to assert CPA claims against Aldente and Nordlund. The trial court granted the Trust's request to enjoin the trustee's sale but ordered the

---

[2] Chapter 31.04 RCW.

2

Trust to sell the property securing Nordlund's loan and to deposit the sale proceeds in the court registry.

The trial court later dismissed all of the other claims brought by Arneson and the Trust on summary judgment. In the first appeal, we affirmed the trial court in part and reversed in part. Arneson I, No. 71148-2-I, slip op. at 2. Dismissal of Arneson's individual claims was affirmed on the basis that the Trust, not Arneson in her individual capacity, was the borrower on the Nordlund loan. Thus, Arneson lacked standing to assert claims as an individual. Arneson I, No. 71148-2-I, slip op. at 20. However, the trial court's summary judgment dismissal of the Trust's claims against Nordlund and Aldente for violation of the CPA— specifically, claims predicated upon violations of the CLA and the usury statutes[3]—was reversed, as we held that the Trust had presented sufficient evidence to raise competing inferences from the facts. Arneson I, No. 71148-2-I, slip op. at 13, 18. Viewing the facts and all reasonable inferences therefrom in the light most favorable to the Trust, we stated that a fact finder *could* infer that Aldente and Nordlund were in the business of making qualifying loans, subjecting them to the CLA licensing requirement, because they had made at least two secured cash loans in the span of a year. Arneson I, No. 71148-2-I, slip op. at 13. Thus, the Trust's claims were remanded for further proceedings.

The trial court's original judgment had awarded Nordlund $604,371.72: $375,000 in unpaid loan principal, $193,263.43 in prejudgment interest at the default rate specified in the promissory note, $29,955.50 in attorney fees, and

---

[3] Chapter 19.52 RCW.

3

$6,152.79 in costs. Because, during the pendency of the action, the Trust had sold the property and deposited the proceeds from that sale into the court registry, the trial court entered an order directing the court clerk to disburse funds from the registry so as to satisfy Nordlund's judgment against the Trust. Thus, Nordlund's judgment against the Trust was paid in full.[4] The remaining proceeds from the Trust's sale of the property were then distributed from the registry to the Trust through its counsel.

After we remanded the case, the superior court directed both parties to return to the registry the money that had been distributed to them. Nordlund did so; the Trust did not. The trial court denied Nordlund's motion for an order of contempt after finding that the Trust was unable to comply with the restitution order. Thus, only funds in the amount of Nordlund's original judgment were extant in the registry.

On remand, Nordlund again moved for summary judgment dismissal of the Trust's usury claim. He now argued that the Trust did not have standing to assert a cause of action for usury because a usury statute, RCW 19.52.032, states that "[t]he debtor, if a natural person," may commence an action, and the Trust was not a natural person. The trial court accepted this argument and granted summary judgment dismissal of the statutory usury claim.

Thereafter, the trial court granted the Trust leave to amend its complaint to add a common law assumpsit claim. Nordlund's motion for summary judgment

---

[4] The Trust filed a motion to stay enforcement of the trial court's order. The trial court determined that the motion was moot because the funds had already been disbursed.

dismissal of this claim was also subsequently granted. Before trial, the Trust voluntarily dismissed its claims against Aldente.

The subsequent jury trial concerned the question of whether Nordlund had committed a violation of the CLA and, thus, a per se violation of the CPA, in failing to obtain a lending license. Both parties submitted proposed jury instructions. Among the factual questions submitted to the jury was whether Nordlund was in the business of making qualifying loans under the CLA. The Trust's proposed instruction on this question sought to invoke our statement in Arneson I that, viewing the evidence in the light most favorable to the Trust, making two secured cash loans in a year supported the inference that one was in the business of making qualifying loans. This proposed instruction was not given.

The jury was instructed, instead, that:

> A violation of the Washington Consumer Loan Act relating to consumer lending is an unfair or deceptive act or practice in the conduct of trade or commerce. A violation of this statute also affects the public interest.
> Gary Nordlund has admitted and you must accept as true that he did not hold a license under the Consumer Loan Act.
> Under the Washington Consumer Loan Act, no person may engage in the business of making secured or unsecured consumer loans of money in excess of 12% per annum without first obtaining and maintaining a license from the Washington State Department of Financial Institutions, unless exempt. The Washington Consumer Loan Act exempts lenders from the Act who made loans "primarily for commercial purposes."
> Commercial purpose means actions taken for the purpose of obtaining anything of value for oneself, for an entity or individual for which the individual acts. Consumer transactions are transactions primarily for personal, family or household purposes.
> A loan's purpose is principally established by the representations that the borrower makes the lender at the time the loan is procured.

> The burden is on the Lender to show the commercial exception applies.
>
> If you find that a violation of the Consumer Loan Act has occurred, then you must find that the first three elements of a Consumer Protection Act violation have been proved.

Jury Instruction 11.

On its special verdict form, the jury answered the question of whether Nordlund was "engaged in the business of making qualified secured or unsecured loans of money in January 2010[]" in the negative. This finding vitiated the viability of the Trust's CLA claim and, with it, its remaining CPA claim. The trial court entered judgment on this verdict in Nordlund's favor and awarded him attorney fees and costs, plus additional interest accruing from the date of remand to the date of entry of final judgment. Following the trial court's entry of judgment, the funds in the court registry were again disbursed to Nordlund. However, part of Nordlund's judgment remains unsatisfied.

The Trust appeals.

II

The first question is whether a claim or defense of usury can only be advanced by a natural person. The trial court ruled that the answer is yes. We rule that the answer is no.

We review summary judgment rulings de novo, engaging in the same inquiry as the trial court. Ruvalcaba v. Kwang Ho Baek, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d

241, 249, 327 P.3d 614 (2014). The facts and all reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. Ruvalcaba, 175 Wn.2d at 6.

Construction of a statute is a question of law. State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). When the language of a statute is clear, legislative intent is derived from the language of the statute alone. Wentz, 149 Wn.2d at 346. The "plain meaning" of a statutory provision is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

Additionally, our Supreme Court has stated that

> "Whenever a legislature had used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby."

Champion v. Shoreline Sch. Dist. No. 412 of King County, 81 Wn.2d 672, 677, 504 P.2d 304 (1972) (quoting State ex rel. Am. Piano Co. v. Superior Court for King County, 105 Wash. 676, 679, 178 P. 827 (1919)).

The trial court stated as follows in granting summary judgment dismissal of the Trust's usury claim:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Mr. Nordlund's Motion for Partial Summary Judgment is GRANTED and any statutory usury claims under chapter 19.52 RCW asserted by the Plaintiff, Penny Arneson, f/k/a Penny Arneson Sweet, on behalf of The 6708 Tolt Highlands Personal Residence Trust against Defendant Gary Nordlund are hereby DISMISSED WITH PREJUDICE. The Trust, as the debtor who is

7

not a natural person, does not have standing to pursue a claim under RCW 19.52.032, under the plain language of that statute.

The trial court's ruling stems from a misreading of the statute cited. This statute provides:

> The debtor, if a *natural person*, or the creditor may bring an action for declaratory judgment to establish whether a loan or forbearance contract is or was usurious, and such an action shall be considered an action on the contract for the purposes of applying the provisions of RCW 19.52.030. Such an action shall be brought against the current creditor or debtor on the contract or, if the loan or debt has been fully repaid, by the debtor against the creditor to whom the debtor was last indebted on the contract. No such an action shall be commenced after six months following the date the final payment becomes due, whether by acceleration or otherwise, nor after six months following the date the principal is fully paid, whichever first occurs. If the debtor commences such an action and fails to establish usury, and if the court finds the action was frivolously commenced, the defendant or defendants may, in the court's discretion, recover reasonable attorney's fees from the debtor.

RCW 19.52.032 (emphasis added).

Its companion statute provides:

> (1) If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount the debtor has paid under the contract exceeds the amount to which the creditor is entitled: PROVIDED, That the debtor may not commence an action on the contract to apply the provisions of this section if a loan or forbearance is made to a corporation engaged in a trade or business for the purposes of carrying on said trade or business unless there is also, in connection with such loan or forbearance, the creation of liability on the part of a *natural*

*person* or that person's property for an amount in excess of the principal plus interest allowed pursuant to RCW 19.52.020. The reduction in principal shall be applied to diminish pro rata each future installment of principal payable under the terms of the contract.

(2) The acts and dealings of an agent in loaning money shall bind the principal, and in all cases where there is usurious interest contracted for by the transaction of any agent the principal shall be held thereby to the same extent as though the principal had acted in person. Where the same person acts as an agent of the borrower and lender, that person shall be deemed the agent of the lender for the purposes of this chapter. If the agent of both the borrower and lender, or of the lender only, transacts a usurious loan for a commission or fee, such agent shall be liable to the principal for the amount of the commission or fee received or reserved by the agent, and liable to the lender for the loss suffered by the lender as a result of the application of this chapter.

RCW 19.52.030 (emphasis added).

These two statutes speak to a related question: when may a borrower, who takes out a loan for a business purpose, assert a claim of usury either as an affirmative cause of action or as a defense to a claim? The answer provided is that this may be done when the loan evinces a liability on the part of a natural person.

The trial court plainly misconstrued these statutes as holding that only a natural person could sue or defend on the basis of a claim of usury—regardless of the purpose of the loan. This was wrong, as shown by the plain language of the statutes. Consumer loans do not fall within the ambit of either statute.

But the ruling was wrong for other reasons.

RCW 19.52.080 provides that:

Profit and nonprofit corporations, Massachusetts trusts, associations, trusts, general partnerships, joint ventures, limited partnerships, and governments and governmental subdivisions, agencies, or instrumentalities may not plead the defense of usury

9

nor maintain any action thereon or therefor, and persons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: PROVIDED, HOWEVER, That this section shall not apply to a consumer transaction of any amount.

Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

Obviously, RCW 19.52.080 is inconsistent with RCW 19.52.030 and RCW 19.52.032. The latter statutes were enacted into law in 1967.[5] RCW 19.52.080 was enacted into law in 1969[6] and reenacted on several occasions.

One case is dispositive. The Supreme Court addressed the conflict between RCW 19.52.080 and RCW 19.52.030 in Paulman v. Filtercorp, 127 Wn.2d 387, 899 P.2d 1259 (1995). RCW 19.52.030(1) permits usury as a claim or defense for corporate debtors when the underlying business loan creates "liability on the part of a natural person . . . for an amount in excess of the principal plus interest allowed." Filtercorp asserted that this allowed it to bring a usury action based on a business transaction, notwithstanding RCW 19.52.080's prohibition, because the loan was guaranteed by a natural person. Paulman, 127 Wn.2d at 391. The Supreme Court rejected this argument, concluding instead that "the enactment of RCW 19.52.080 represents a calculated legislative decision not to afford the protection of the usury laws to either a corporation or a natural person who borrows money for business purposes." Paulman, 127 Wn.2d at 392.

---

[5] LAWS OF 1967, Ex. Sess., ch. 23, § 5, 6.
[6] LAWS OF 1969, 1st Ex. Sess., ch. 142, § 1.

Thus, the Supreme Court rejected the notion that a borrower's status (as a corporation or a natural person) has significance. Instead, the court stressed that it is the borrower's purpose in obtaining the loan that is the paramount question in determining whether the borrower may employ usury as a claim or defense.

We employ the same analysis. The "natural person" language in RCW 19.52.032—relied upon by the trial court in dismissing the Trust's usury claim—is a nullity for the same reason as that language in RCW 19.52.030 is a nullity. Under the rule announced in Paulman, it is the purpose of the loan that controls. The borrower's existence as a natural person or a corporation is without significance.

The parties continue to dispute whether the Nordlund loan was a business loan or a consumer loan. This presents a question of fact for the trier of fact.

The trial court erred by dismissing the statutory usury claim.[7]

III

Next, we address the trial court's dismissal of the Trust's common law assumpsit claim. Nordlund urges that we affirm the trial court, averring that the Trust presented no evidence to support its claim. This assertion is baseless. Because the Trust presented evidence to support each element of its claim, the trial court erred by dismissing it.

---

[7] As an alternative ground for dismissal, Nordlund argued below that any statutory usury claim was barred by a six-month statutory limitation period. The Trust, for its part, argued that the CPA's four-year limitation period, and not the usury statute's shorter period, governed this action. The trial court did not rule on Nordlund's limitation period defense. Nevertheless, Nordlund urges this as an alternative basis for affirmance. However, there is no ruling for us to review. We decline to weigh in on the question in the first instance.

The assumpsit claim, of course, is subject to a three-year limitation period. Flannery v. Bishop, 81 Wn.2d 696, 702, 504 P.2d 778 (1972).

Again, we review summary judgment rulings de novo. Ruvalcaba, 175 Wn.2d at 6. The party seeking summary judgment must demonstrate the absence of a genuine question of material fact, Ruvalcaba, 175 Wn.2d at 6, and the moving party is entitled to summary judgment only when there is a "'complete failure of proof concerning an essential element of the nonmoving party's case [which] necessarily renders all other facts immaterial.'" Cho v. City of Seattle, 185 Wn. App. 10, 15, 341 P.3d 309 (2014) (internal quotation marks omitted) (quoting Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989)).

The essential elements of an assumpsit claim are: "(1) a loan or forbearance, either expressed or implied, of money, or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law." Flannery v. Bishop, 81 Wn.2d 696, 698, 504 P.2d 778 (1972).

The availability of assumpsit as a cause of action has not been foreclosed by enactment of the usury statutes. Lee v. Hillman, 74 Wash. 408, 412, 133 P. 583 (1913). A plaintiff's remedy on a successful assumpsit claim is "in assumpsit for money had and received." Edwards v. Surety Fin. Co. of Seattle, 176 Wash. 534, 536, 30 P.2d 225 (1934) (citing Lee, 74 Wash. at 412).

Assumpsit is an equitable remedy.

> "Assumpsit will lie whenever the defendant has received money
> which is the property of the plaintiff, and which the defendant is
> obliged by natural justice and equity to refund."
> . . . .
> "Whenever a man receives money belonging to another without any
> reason, authority, or consideration, an action lies against the

receiver as for money received to the other's use; and this as well where the money is received through mistake, under color, and upon an apprehension though a mistaken apprehension of having good authority to receive it, as where it is received by imposition, fraud, or deceit in the receiver.'"

Soderberg v. King County, 15 Wash. 194, 199-200, 45 P. 785 (1896) (quoting

Bayne v. United States, 93 U.S. 642, 642, 23 L. Ed. 997 (1876) and Attorney

General v. Perry, 2 Com. 481 (Gr. Brit. 1725)).

Here, Nordlund premised his motion for summary judgment dismissal on the contention that the Trust could not establish any of the last three elements of the assumpsit claim. To the contrary, the Trust presented evidence on each. First, it pointed to the terms of the promissory note to support the proposition that the loan was repayable absolutely.[8]

---

[8] There is no genuine dispute that the loan was "repayable absolutely." Nordlund's assertion that such a dispute exists is premised on the Trust's alternative pleading, in its second amended complaint, of a claim for rescission. The practice of pleading in the alternative is accounted for in our civil rules:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or on equitable grounds or on both.

CR 8(e)(2).

"'[I]n light of the liberal policy embodied in Rule 8(e)(2), we hold that a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case.'" Port of Seattle v. Lexington Ins. Co., 111 Wn. App. 901, 919, 48 P.3d 334 (2002) (quoting Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir. 1985)). Nordlund's argument relies on the notion that a claim, once pleaded by a party, effectively estops that party from asserting any inconsistent claims. This notion is without any merit.

Nordlund also misunderstands the term "repayable absolutely." This phrase means that the repayment obligation is not conditional and does not depend on a contingency. See Embola v. Tuppella, 127 Wash. 285, 287, 220 P. 789 (1923) ("'If it is payable only on some contingency, then the transaction is not usurious.'" (quoting 27 R.C.L. § 21, p. 220)). The Trust has never claimed that the obligation to repay the principal amount due was conditioned on an event that did not occur.

13

Next, it offered a HUD-1[9] Settlement Statement to show that the effective interest rate was 28 percent, tending to prove that the loan was constructed to exact a profit greater than that allowed by law. In addition, it pointed to the trial court's 2013 award of principal and accrued interest at the contract rate of 18 percent to show that Nordlund did in fact exact this profit.[10] The Trust also offered the parties' Private Money Term Sheet to show that Nordlund intended to violate the law by mischaracterizing a personal loan as one for business purposes.

The only element genuinely in dispute is whether Nordlund has exacted a greater profit than that allowed by the law. An inference exists that Nordlund has *already received*, from the court registry, a sum of money that, viewed in the light most favorable to the Trust, included the challenged interest. If, on remand, the Trust can prove this, prove that the usury statutes apply to its loans, and prove that the interest rate charged was greater than that permitted by the usury statutes, it will have established all elements of its assumpsit claim. There is evidence or inferences on each of these elements. The trial court erred by dismissing this claim.

IV

The Trust next assigns error to the trial court's refusal to give its proposed jury instruction. We find no error in the trial court's decision.

---

[9] United States Department of Housing and Urban Development.
[10] Although the money once disbursed to Nordlund was refunded to the court registry, it has again been disbursed to Nordlund.

14

Whether to give a proposed jury instruction is within a trial court's discretion. We review the decision for an abuse of discretion. Christensen v. Munsen, 123 Wn.2d 234, 248, 867 P.2d 626 (1994); Seattle W. Indus., Inc. v. David A. Mowat Co., 110 Wn.2d 1, 9, 750 P.2d 245 (1988); Thomas v. Wilfac, Inc., 65 Wn. App. 255, 264, 828 P.2d 597 (1992) (citing Petersen v. State, 100 Wn.2d 421, 440, 671 P.2d 230 (1983)). The propriety of a jury instruction is governed by the facts of the particular case. Housel v. James, 141 Wn. App. 748, 759, 172 P.3d 712 (2007). As a whole, jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and properly inform the jury of the applicable law. Housel, 141 Wn. App. at 758.

At trial, the Trust requested the following instruction:

A lender making at least two secured cash loans within a year supports the inference that the lender is engaged in the business of making qualifying loans under the Washington State Consumer Loan Act.

The language of this instruction is lifted from our prior opinion, in which we stated that evidence of Aldente making two cash loans within a year "supports at least an inference that Aldente was, in fact, in the business of making qualifying loans." Arneson I, No. 71148-2-I, slip op. at 13. The Trust asserts that this language reflects the law of the case and, thus, the trial court's refusal to give the proposed instruction was reversible error. This argument is without merit.

The law of the case doctrine provides that "once there is an appellate holding enunciating a principle of law, that holding will be followed in later stages of the same litigation." State v. Schwab, 134 Wn. App. 635, 644, 141 P.3d 658

(2006), aff'd, 163 Wn.2d 664, 185 P.3d 1151 (2008). The doctrine is not applicable here because the language in our previous holding did not enunciate a principle of law. Rather, we merely stated that evidence of a lender making two secured loans within a year—when viewed in the light most favorable to the Trust—raised an inference sufficient to create an issue of fact that precluded summary judgment. Arneson I, No. 71148-2-I, slip op. at 13.

This does not mean that the trier of fact was required to draw that inference. "Since the jury may have drawn such an inference, it takes the plaintiffs' case past a nonsuit and to the jury. However, when the case is tried to the court, the trier of the facts is in a position to say, at the conclusion of the plaintiffs' case, that it does or does not, draw an inference [supporting plaintiffs]." Tuengel v. Stobbs, 59 Wn.2d 477, 477-78, 367 P.2d 1008 (1962) (citations omitted). That the trier of fact was a jury changes nothing.

Moreover, both parties were able to argue their theories of the case to the jury. The Trust was not barred from making arguments encouraging the jury to draw the inference it wished. Indeed, in its closing argument, the Trust urged:

> There's a secondary issue that we need to address, and that is whether or not Mr. Nordlund was in the business of doing loans. So what do we have for that? Well, first of all, as I mentioned just a few minutes ago, Mr. Nordlund was, in fact, involved in a boat building business, but he was also involved in other businesses. His testimony, he admitted it freely and accurately.
> But we have more than that. Aside from those businesses, it would appear that Mr. Nordlund was, in fact, engaged in the business of making loans, to the extent that he made two loans for profit. One was paid, and from the testimony, one is to be paid, based upon the jury's determination, from money that's sitting in the court registry.
>  . . . .

16

> So what are we asking for? We're asking for the jury to determine that Mr. Nordlund was in the business of providing loans. In fact, both loans were done by Mr. Flynn, brokered by Mr. Flynn. We're asking the jury to find that the loan violated the Consumer Loan Act; that the loan itself exceeded the 12 percent interest rate that was permissible for such loans; that the loan was for consumer purposes, not commercial purposes, as based upon the orders of the Court in the family law proceedings, and render a decision and judgment in favor of my client, Ms. Arneson.

Here, the trial court's jury instructions both presented an accurate summary of the law and allowed the Trust's counsel to extensively argue the Trust's theory of the case (that making two loans within one year constituted engagement in the business of making loans under the CLA). The trial court did not abuse the discretion afforded to it. There was no error.

V

Finally, we address the issue of attorney fees and costs. The trial court awarded attorney fees and costs to Nordlund after entering judgment on the jury's verdict. On appeal, both parties request an award of fees. "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000).

As two of the Trust's claims are remanded for further proceedings, an award of appellate attorney fees is premature—the substantially prevailing party has not yet been determined. In addition, our conclusion that such an award is premature also requires that the trial court's previous award of attorney fees and costs to Nordlund be vacated.

17

The judgment of dismissal of the CLA claim, and the CPA claim premised upon a violation of the CLA, is affirmed. The dismissals of the statutory usury and assumpsit claims are reversed. The award of attorney fees and costs is ordered to be vacated.

Affirmed in part, reversed in part, and remanded.

WE CONCUR: